**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CARL W. WOODYARD,** | * | |
| | * | |
| **Plaintiff,** | * | **CIVIL ACTION NO. 14-00203-B** |
| | * | |
| **vs.** | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

<u>**ORDER**</u>

Plaintiff Carl W. Woodyard (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On May 6, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED and REMANDED.**

I.   **Procedural History**

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on July 17, 2009.  (Tr. 266).  He alleges that he has been disabled since February 15, 2009, due to blindness in his right eye and a sore on his left ankle.  (Id. at 260). Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Warren L. Hammond, Jr. (hereinafter "ALJ") on January 19, 2011.  (Id. at 65).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims.  (Id.).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id.).  On January 28, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 90).

Plaintiff requested review by the Appeals Council, and on June 20, 2012, the Appeals Council remanded the case to the ALJ to further evaluate the severity of Plaintiff's impairments, specifically including his alleged mental impairments and alcohol dependency; to further evaluate whether Plaintiff meets a Listing; to further evaluate Plaintiff's RFC, specifically as it relates to his visual limitations; to further evaluate the opinions of the non-treating sources; to further evaluate Plaintiff's credibility regarding his subjective complaints; to

further evaluate whether Plaintiff could return to his past work as a laborer; and if warranted, to obtain additional evidence from a vocational expert to clarify the effect of Plaintiff's limitations on the occupational base. (Id. at 108-111).

On August 24, 2012, Plaintiff attended a second administrative hearing with his counsel and provided testimony related to his claims. (Id. at 43). A vocational expert ("VE") also appeared at the second hearing and provided testimony. (Id.). On September 26, 2012, the ALJ issued a second unfavorable decision finding that Plaintiff is not disabled. (Id. at 23). The Appeals Council denied Plaintiff's request for review on April 2, 2014. (Id. at 1). Therefore, the ALJ's decision dated September 26, 2012, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on May 6, 2015 (Doc. 16), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> **Whether the ALJ erred in relying on the Medical-Vocational Guidelines (grids) to find Plaintiff not disabled after finding that Plaintiff has the severe, non-exertional impairment of blindness in the right eye?**

3

## III. **Factual Background**

Plaintiff was born on October 5, 1959, and was fifty-two years of age at the time of his administrative hearing on August 24, 2012. (Tr. 266). Plaintiff testified that he completed the twelfth grade in high school and served in the military for fifteen months. (Id. at 46).

Plaintiff testified that he last worked in 2008 as a construction laborer.[1] (Id. at 47). Plaintiff quit working in 2008 because a sore on his ankle would not heal, and he was told that it was a health hazard.[2] (Id. at 47-49). He testified that he still cannot work because of the sore on his ankle[3] and because of blindness in his right eye. (Id. at 49). Plaintiff testified that his eyesight in his right eye is a "blur" and that it affects his depth perception.[4]   (Id. at 58). Plaintiff

---

[1] According to Plaintiff's Disability Report, he last worked from 1991 to 2009 as a laborer, running an air jack, doing carpenter work, and performing general labor work. (Tr. 261).

[2] In his Disability Report, Plaintiff stated that he stopped working because he "got in trouble and went to jail." (Tr. 260).

[3] Plaintiff testified that the pain in his left ankle is a seven out of ten on the pain scale. (Tr. 50).

[4] Plaintiff's medical records reflect that he had a corneal transplant in 1987 following an eye injury. (Tr. 494). He began having problems with vision in his right eye again in October 2009. (Id. at 442). He had another corneal surgery in his right eye in 2010. (Id. at 595). Plaintiff testified that he had also had cataract surgery in his right eye in 2012, but he still has problems with his vision in that eye. (Id. at

testified that he can read and write, although he cannot read out of his right eye. (Id. at 47, 49).

Plaintiff testified that he takes muscle relaxers, as well as medication for anxiety and depression and that it makes him drowsy. (Id. at 51-52, 56-57). In his Disability Report, he indicated that he takes acetaminophen, codeine, and Doxycycline Hyclate (for infection). (Id. at 263). He testified that the medications provide moderate relief from his pain and that he "can bear it." (Id. at 52).

Plaintiff stated in a Function Report dated August 13, 2009, that he lives alone and takes care of his pets.[5] (Id. at 269-70). At his hearing, Plaintiff testified that he can feed himself, although he sometimes has problems bathing and dressing. (Id. at 52). Plaintiff testified that he does not shop, cook, clean house, or do laundry. (Id.). However, in his Function Report, he indicated that he shops for groceries, that he prepares simple meals for himself, and that he does some cleaning. (Id. at 271). Plaintiff further testified that he can walk a block, stand for ten minutes, and sit for five minutes. (Id. at 53). He stated in his Function Report that he

---

49). Plaintiff has uncorrected 20/20 vision in his left eye. (Id. at 815).

[5] In a second Function Report dated March 24, 2011, Plaintiff states that he does not have pets. (Tr. 317).

uses a cane that was not prescribed by a doctor and that he walks and rides a bicycle to get around.[6]   (Id. at 272, 275, 322).   Plaintiff testified that he cannot lift at all; he cannot grasp objects; he cannot reach, push, or pull; and he cannot bend over, although he can climb a couple of steps.   (Id. at 54-55).

Plaintiff stated that he does not need any reminders to take care of his personal needs or to take his medicine.   (Id. at 271).   He indicated in his Function Report that he cannot handle a savings account or checkbook, but he can count change. (Id. at 272).

Plaintiff testified that he has a driver's license, but he cannot drive because he received a DUI.   (Id. at 53).   According to Plaintiff, he recently completed a treatment program for alcohol abuse.   (Id. at 49).   Plaintiff also indicated that his social activities are limited to going to church.   (Id. at 273).

IV.  **Analysis**

A.   **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.   The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct

---

[6] In a subsequent Function Report dated March 24, 2011, Plaintiff stated that he travels only by walking.  (Tr. 319)

legal standards were applied.[7]  Martin v. Sullivan, 894 F.2d
1520, 1529 (11th Cir. 1990).  A court may not decide the facts
anew, reweigh the evidence, or substitute its judgment for that
of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th
Cir. 1986).  The Commissioner's findings of fact must be
affirmed if they are based upon substantial evidence.  Brown v.
Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.
Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding
substantial evidence is defined as "more than a scintilla, but
less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to
support a conclusion.").  In determining whether substantial
evidence exists, a court must view the record as a whole, taking
into account evidence favorable, as well as unfavorable, to the
Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131
(11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4
(S.D. Ala. June 14, 1999).

   B.   **Discussion**

   An individual who applies for Social Security disability
benefits must prove his or her disability.  20 C.F.R. §§
404.1512, 416.912.  Disability is defined as the "inability to
engage in any substantial gainful activity by reason of any

---

[7] This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[8] 20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff

---

[8] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

has not engaged in substantial gainful activity since February 15, 2009, the alleged onset date, and that he has the severe impairments of chronic ulcer in the left leg, blindness in the right eye, personality disorder, and alcohol dependence. (Tr. 25). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 26).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform less than the full range of medium work, with the following limitations: "[w]ith normal breaks, he can stand and/or walk for a total of about six hours in an 8-hour workday and sit for a total of about six hours in an 8-hour workday. He can occasionally climb ramps and stairs. He cannot climb ladders, scaffolds, and ropes. He can frequently balance, stoop, kneel, crouch and crawl. He is able to avoid usual workplace type hazards. He can work effectively with most small and large objects and consistently follow written instructions normal size print. He is limited to unskilled work." (Id. at 28). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely

9

credible to the extent they were inconsistent with the residual functional capacity assessment.  (Id. at 28).

Given Plaintiff's RFC for less than the full range of medium, unskilled work, the ALJ found that Plaintiff is not capable of performing his past work as a cement mason (heavy, skilled), log chipper (medium, semi-skilled), logging truck operator (medium, semi-skilled), and material handler (heavy, semi-skilled).  (Id. at 34).  The ALJ found that although Plaintiff does not have the residual functional capacity to perform the full range of medium work, his additional limitations, as detailed above, "have little or no effect on the occupational base of unskilled medium work."  (Id. at 35).  The ALJ thus concluded that "a finding of 'not disabled' is appropriate under the framework of [Medical Vocational Rules 203.29 and 203.22]."[9]  (Id. at 35-36).

In discussing Plaintiff's RFC, the ALJ made the following relevant findings:

> At the hearing, the claimant testified that his vision in his right eye is limited to a grey blur.  He reported that his eye problems have affected his depth perception and that he cannot look all the way over to

---

[9] Plaintiff does not take issue with respect to any of the ALJ's findings except for the ALJ's reliance on the Medical Vocational Guidelines (grids) to determine if he is disabled, given the ALJ's finding that Plaintiff has the severe, non-exertional impairment of blindness in the right eye.  (Doc. 13 at 2-3). Therefore, the Court's discussion is limited to that issue.

one side while driving.  He cannot read with his right eye.  He uses glasses to correct the vision in his left eye.

The claimant's complaints in the medical record along with clinical findings support his complaints of lack of vision in his right eye.  The claimant underwent a corneal transplant in his right eye in 1987.  On October 2, 2009, he reported two weeks of aura and blurry vision in his right eye.  On October 22, 2009, he noted his right eye was red, irritated, and photophobic.  (Exhibit 6F).  On November 3, 2009, the claimant was noted to be blind in his right eye. (Exhibit 3F).  On December 2, 2009, the claimant reported blurry vision in his right eye.  (Exhibit 6F).  On July 21, 2010, he underwent a penetrating keratoplasty of the right eye.  In August 2010, he underwent resuturing of the corneal graft. (Exhibit 10F).   On November 2, 2010, the claimant denied complaints and reported improving vision in his right eye. (Exhibit 12F).  On December 20, 2010, he complained of three days of redness and tearing in his right eye with mild photophobia and decreased vision. (Exhibit 14F).   On June 20, 2011, he continued to complain of changes in his right eye vision. (Exhibit 19F).   The claimant had no complaints on March 30, 2012, but, on April 17, 2012, he complained of redness and photophobia in his right eye along with one day of pain. (Exhibit 21F).

Despite the lack of vision in his right eye, the record reflects the claimant retains useful vision in his left eye.  On November 3, 2009, the claimant had 20/20 vision in his left eye. (Exhibit 3F). On December 2, 2009, his left eye vision was 20/20. (Exhibit 6F).  In January 2010, his left eye visual acuity was noted to be 20/25.  On February 10, 2010 and March 10, 2010, his left eye vision was 20/20. (Exhibit 8F).  In September 2010, his visual acuity in the left eye was at least 20/25. (Exhibit 10F).

On June 20, 2011, his left visual acuity was 20/20. (Exhibit 19F). The claimant's uncorrected vision in his left eye was 20/20 on April 17, 2012. (Exhibit 21F).

Therefore, the undersigned finds that the claimant has limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision due to his right eye blindness. Nevertheless, he is able to use his left eye to avoid usual work place type hazards, work effectively with most small and large objects, and consistently follow written instructions in normal size print.

At the hearing, the claimant testified that he does not do any lifting because he had been told lifting had strained his eye: On September 29, 2010, a physician with the Tulane University Hospital & Clinic Department of Ophthalmology noted that the claimant had eye surgery on the right eye in July and August, and, as a result, "is unable to lift anything >10 lbs or work until 10/31/10 due to his present condition and need for rehabilitation." On November 13, 2010, a second note stated, "He is still unable to lift anything >10 lbs until further notice." (Exhibit 12F). On their face, these notes acknowledge that the lifting limitation was temporary. The record does not contain a note explicitly lifting the limitation, but the claimant did not return to Tulane for further treatment. His subsequent ophthalmologic treatment records do not reflect a continuing lifting limitation. (Exhibits 19F, 20F, and 21F). Therefore, the undersigned has given this opinion little weight, as the evidence does not show that it represents a limitation in place for at least twelve continuous months.

. . .

On November 6, 2009, Charles Crump, M.D. completed a "Physical Residual Functional

Capacity Assessment." He opined that the claimant was limited to the medium range of work with occasional climbing of stairs and ramps; no climbing ladders, ropes, and scaffolds; and frequent balancing, stooping, kneeling, crouching, and crawling. He indicated that the claimant had limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision but could avoid usual workplace type hazards, work effectively with most small/large objects, and consistently follow written instructions in normal size print. (Exhibit 5F). Although Dr. Crump did not have the opportunity to examine the claimant, he provided a detailed description of the clinical findings on which he based his opinion. Subsequent evidence entered into the record does not support greater limitations. As noted above, the claimant has retained his left eye vision; his ulcer healed; and treatment and clinical findings related to his diabetes have been conservative. Therefore, the undersigned has given Dr. Crump's opinion great weight.

(Id. at 28-29, 32).

In addition, in applying the Medical Vocational Guidelines

(grids), the ALJ made the following relevant findings:

If the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.29 and Rule 203.22. However, the additional limitations have little or no effect on the occupational base of unskilled medium work. A finding of "not disabled" is therefore appropriate under the framework of these rules. The claimant can perform the approximately six hours of standing or walking in an 8-hour day required by a full range of medium work. (SSR 83-10). According to SSR 85-15, some

limitation in climbing and balancing would not ordinarily have a significant impact on the broad world of work, particularly since the claimant retains the capacity to ascend and descend ramps and stairs and balance. The claimant can perform the frequent stooping and crouching necessitated for most medium jobs. Limitations on crawling and kneeling are of little significance in the broad world of work. (SSR 85-15). A substantial number of jobs remain across all exertional levels for a person who retains sufficient visual acuity to be able to handle and work with rather large objects and has the visual fields necessary to avoid ordinary hazards in a workplace. (SSR 85-15). The claimant has also been limited to the unskilled range of work. This additional limitation would have little or no effect on the occupational base of unskilled sedentary work (SSR 85-15 and 96-9p).

(Id. at 35).

The Court now considers the foregoing in light of the record in this case and the issue on appeal.

1. **Issue**

   **A. Whether the ALJ erred in relying on the Medical-Vocational Guidelines (grids) to find Plaintiff not disabled after finding that Plaintiff has the severe, non-exertional impairment of blindness in the right eye?**

In this case, Plaintiff claims that the ALJ erred in relying on the Medical-Vocational Guidelines (grids) to find him not disabled, given the ALJ's finding that he has the severe, non-exertional impairment of blindness in the right eye. (Doc. 13 at 2-3). Plaintiff argues that the ALJ's finding that he

suffers from this severe, non-exertional impairment precludes the use of the grids to find him disabled.  (Id.).  Having reviewed the record at length, the Court finds that this case must be reversed and remanded due to the ALJ's failure to properly apply the grids.

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant."  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted).  The ALJ must articulate specific jobs that the claimant is able to perform given his or her age, education, and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture."  Id.

One means by which the Commissioner meets this burden is by reliance on the Medical-Vocational Guidelines ("grids").  Id. at 1201-02.  Exclusive reliance upon the grids is inappropriate, however, "'either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.'"[10]  Id. at 1202 (citations omitted).

---

[10] Nonexertional limitations are those limitations that "'affect an individual's ability to meet the nonstrength demands of jobs' and include mental limitations and restrictions, pain limitations, and all physical limitations and restrictions that are not reflected in the seven strength demands."  Callens v. Astrue, 2012 U.S. Dist. LEXIS 115043, *18, 2012 WL 3542200, *7

Where nonexertional impairments are present, "[t]he ALJ must 'make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.'" Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). "'It is only when the claimant can clearly do unlimited types of [work at a given level] that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.'" Allen, 880 F.2d at 1202 (emphasis in original) (citations omitted).

Turning to the case at hand, the Court finds instructive the decision, Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985), in which the Eleventh Circuit held that the ALJ erred in relying exclusively on the grids to find that the claimant was disabled, where the ALJ had previously found that the claimant

---

(N.D. Ala. Aug. 15, 2012) (quoting S.S.R. 96-4p). "Exertional limitations 'affect your ability to meet the strength demands of jobs,' and include 'sitting, standing, walking, lifting, carrying, pushing, and pulling.'" Id. at *6 (quoting 20 C.F.R. § 404.1569(a)).

could not perform work requiring more than "gross vision."   The

Eleventh Circuit stated:

> The ALJ relied exclusively on the grids to
> find that there were jobs in the national
> economy which claimant could perform.
> Exclusive reliance on the grids is not
> appropriate either when claimant is unable
> to perform a full range of work at a given
> residual functional level or when a claimant
> has non-exertional impairments that
> significantly limit basic work skills. Broz
> v. Schweiker, 677 F.2d 1351, 1361 (11th Cir.
> 1982), adhered to sub nom. Broz v. Heckler,
> 711 F.2d 957 (11th Cir. 1983). The ALJ was
> free to rely on the grids despite certain of
> Francis's non-exertional impairments, such
> as his hand tumor because it was found not
> to impair function of the hand or such as
> his shortness of breath which the ALJ found
> not credible. However, as to Francis's
> vision problems the ALJ stated:

>> The Administrative Law Judge has given
>> careful consideration to the fact that
>> claimant's impairment probably
>> precludes her [sic] from performing
>> work which requires her to engage in
>> work requiring more than gross vision.
>> However, the undersigned is persuaded
>> that this restriction does not
>> significantly diminish the range of
>> medium jobs available to the claimant
>> and that the Rule [the grid] cited
>> above remains applicable.

> After acknowledging that the claimant is
> limited to performing medium work requiring
> only gross vision, the ALJ nevertheless
> applied the grids because he was "persuaded"
> that this impairment did not significantly
> limit the range of medium work available to
> claimant. Yet there is no vocational
> testimony upon which the ALJ could have
> relied to be so persuaded. Whether the
> vision problem is seen as a non-exertional

> impairment or as a limitation on the range
> of medium work claimant could perform,
> reliance on the grid is inappropriate.

Francis, 749 F.2d at 1566-67.

In the present case, the ALJ likewise found that Plaintiff has the severe, non-exertional impairment of "blindness in the right eye," resulting in "limited near acuity, [limited] far acuity, [limited] depth perception, [limited] accommodation, [limited] color vision, and [limited] field of vision."[11]  (Tr. 25, 29).  Plaintiff's vision deficit (as well as his limitations related to unskilled work, avoiding work place type hazards, and only occasional climbing) are clearly nonexertional impairments/limitations.  See Langley v. Colvin, 2013 U.S. Dist. LEXIS 40934, *23 n.18, 2013 WL 1218399, *7 n.18 (S.D. Ala. Mar. 25, 2013) ("Nonexertional limitations . . . relate to limitations that affect capacities such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching and the like. . . . Environmental restrictions are also considered to be nonexertional limitations.").

The ALJ acknowledged that, because of Plaintiff's nonexertional impairments, he could not perform the full range

---

[11] The ALJ credited Plaintiff's testimony that he has problems with depth perception and cannot look all the way over to one side when driving.  (Tr. 28).

of medium work.  The ALJ found that Plaintiff is restricted to climbing ramps and stairs only occasionally, should avoid usual workplace type hazards, could work with normal size print or larger, and is able to perform only unskilled work.  (Id. at 28).

Because the ALJ found that nonexertional limitations were present in this case, he was required to make an additional, specific finding as to whether the nonexertional limitations were "severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."  Foote, 67 F.3d at 1559.  Absent clear evidence that Plaintiff can do *unlimited* types of work at the given level, the ALJ was required to call a vocational expert to establish whether Plaintiff can perform work which exists in the national economy.  Allen, 880 F.2d at 1202.  Because the ALJ found that Plaintiff could not perform unlimited types of medium work (id. at 28), he was required to call a VE to establish whether there were job in the national economy that Plaintiff could perform.

Interestingly, the record shows that the ALJ did obtain evidence from a vocational expert at Plaintiff's hearing that there were jobs in the national economy that an individual with Plaintiff's limitations could perform, such as dryer attendant, rug cleaner helper, and hand packer (all medium and unskilled).

(Id. at 61).   However, for unknown reasons, the ALJ makes no reference to the VE's testimony.   Instead, in his decision, the ALJ relied exclusively upon the grids to find that Plaintiff was not disabled.   (Id. at 35-36, 61).   The ALJ concluded that, "the additional limitations [including Plaintiff's right eye blindness] have little or no effect on the occupational base of unskilled medium work," and "[a] finding of 'not disabled' is therefore appropriate under the framework of these rules."   (Id. at 35).

Although the ALJ purports to rely on SSR 85-15, that Ruling does not support his conclusion.   Rather, the Ruling indicates that where, as here, a claimant's impairments necessitate that he or she avoid workplace hazards or where the claimant has a visual impairment coupled with a restriction to unskilled work, the services of a VE is generally required.[12]   SSR 85-15, 1985 WL

---

[12] SSR 85-15 provides in pertinent part:

      4. Visual Impairments

      As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels.   However, a finding of disability could be appropriate in the

56857.   In addition, the ALJ assigned great weight to the opinion of State Agency medical consultant, Dr. Charles Crump, M.D., that although Plaintiff has "limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision," he could avoid usual workplace type hazards, work effectively with most small/large objects, and consistently follow written instructions in normal size print. (Id. at 32). However, Dr. Crump's opinion does not establish that Plaintiff can perform work which exists in the national economy.

---

> relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, *unskilled* or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.
>
> 5. Environmental Restrictions
>
> A person may have the physical and mental capacity to perform certain functions in certain places, but to do so may aggravate his or her impairment(s) or subject the individual or others to the risk of bodily injury. Surroundings which an individual may need to avoid because of impairment include those involving . . . *recognized hazards such as unprotected elevations and dangerous moving machinery. . . . Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS* [vocational specialist].

SSR 85-15, 1985 WL 56857 (emphasis added).

The ALJ's findings leave no question that Plaintiff cannot perform *unlimited* types of work at the medium level because of his nonexertional impairments.   (Id. at 28).   Thus, absent testimony from a vocational expert that Plaintiff's nonexertional impairments do not significantly limit his basic work skills or preclude him from performing a wide range of medium work, the ALJ's decision is not supported by substantial evidence.[13]   See Francis, 749 F.2d at 1567 (absent vocational expert testimony on which the ALJ could base his decision that

_____

[13] The Court rejects the Commissioner's argument that any error by the ALJ in failing to rely on the VE's testimony in this case was harmless.   First, it is not clear that the ALJ presented a correct hypothetical to the VE. (Doc. 12 at 64-65).   In the hypothetical to the VE, the ALJ indicated that Plaintiff could perform a *full* range of medium work while in discussing Plaintiff's RFC, the ALJ found that Plaintiff could perform *less than the full range* of medium work. (Id.).   Further, while the ALJ mentioned in the hypothetical that Plaintiff was lacking one eye, he did not include his findings that Plaintiff has "limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision."   Moreover, as aptly stated by the Court in Harrell v. Colvin, 2014 U.S. Dist. LEXIS 68739, *12, 2014 WL 2093961, *4 (S.D. Ala. May 20, 2014), "[t]he ALJ failed to carry her burden 'to establish that [Harrell] could perform other work that exists in the national economy. . . . It is to no avail that the ALJ may have elicited testimony from a VE at the hearing regarding work Harrell could perform *because* the ALJ, for whatever reason, chose not to rely on that testimony in her decision denying Harrell's benefits. . . . For that reason, the Commissioner's argument that this Court should 'read between the lines' and affirm the ALJ's decision anyway because 'the ALJ already obtained vocational expert testimony, which [counsel for the Commissioner on appeal, *not the ALJ*, believes] clearly established that [Harrell] was not disabled' . . . must be rejected."   (Emphasis and brackets in original]."

the claimant's vision impairment did not significantly limit the range of medium work available, the ALJ's reliance on the grids was inappropriate); <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992) (the ALJ erred in relying on the grids where claimant was not able to do unlimited types of light work, *i.e.*, he could not work around dangerous machinery or at unprotected heights; in such cases, expert testimony was required to determine whether claimant's limitations were severe enough to preclude him from performing a wide range of light work.).

In sum, the ALJ did not fulfill his duty to develop a full and fair record with substantial evidence showing that there were specific jobs in the national economy that Plaintiff could perform.  On remand, in accordance with <u>Francis v. Heckler</u>, 749 F.2d 1562 (11th Cir. 1985), the Commissioner should utilize the services of a vocational expert to identify what medium jobs, if any, Plaintiff can perform in light of his nonexertional impairments.  <u>See</u> <u>Gray v. Massanari</u>, 2001 U.S. Dist. LEXIS 6619, *9 (April 17, 2001), *report and recommendation adopted by* 2001 U.S. Dist. LEXIS 6544, *1, 2001 WL 530704, *2 (S.D. Ala. May 1, 2001).

## V.    <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the

Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **REVERSED** and **REMANDED**.

    **DONE** this **23rd** day of **September, 2015.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
